May it please the court. My name is Jeff Thomas. I'm here representing the appellants Dianne Kelley, Kenneth Hanson, Jim Walters, Matt Morales, Russell Hall, and Don Schroeder. We are here in this court based on the court's discretionary acceptance of our Rule 23 petition reviewing the denial of two specific classes in the district court below. In the district court below, the plaintiffs sought certification of two distinct classes. The first was a class containing all persons who affirmatively participated in Microsoft's Express Upgrade program but received an upgrade only to Microsoft Home Basic. The second class was all persons who purchased Windows Vista capable PCs that lacked the ability to use what was called at the time the Microsoft Windows device driver model, which we will shorthand as calling WDDM in the briefs. In many of these cases, we talked about many factors under Rule 23. This one is an interesting case in the sense that the only factor under Rule 23 that's relevant to this appeal is the Rule 23B requirement that predominance be the test and that the legal issues and factual issues will predominate over the individual issues of the classes. I want to talk briefly about the standard of review, which we believe for all issues before you today is de novo. There are hundreds of cases that talk about the denial of class certification being discretionary in the district court. As this court recently said in the Yokoyama case not too long ago, the abuse of discretion, however, will not be applied when the court is determining questions of law. In order to flip that around, you can say that an error of law will be considered an abuse of discretion. So however you categorize it, these are three questions of law that are before this court to determine, and essentially this court is writing on a clean slate with respect to these three questions. But if we're talking about whether a common issue predominates over individual issues, that's the kind of judgment call where I would think there would be an abuse of discretion standard and not, I mean, it's hardly an error of law if the judge makes a miscalculation in how, which kind of issue predominates. That's very true, Your Honor. But here the judge, in our view, made three errors of law as applied to the facts that were before. One was an error of law on the express upgrade class by misapplying Washington law and holding that a Washington plaintiff must show individual reliance in every case. Two errors of law on the omission class. One was an error of law at the initial determination whether or not that omission class is either a primarily affirmative case or a primarily omission case. Another legal question. And finally, she made a ruling about materiality, and in our view she applied a subjective test to making that determination when the law is clear that the judge needs to apply a subject of test when looking at this issue. So they're all legal questions as applied to the facts and not specifically looking at the facts and saying this one is that, they were initial errors of law. Not in the first one. My understanding of Washington law is that it's a little wiggly in the sense that although it said that there's not a subjective reliance requirement, there's also a causation requirement, and the causation requirement turns out to look an awful lot like a reliance requirement. Yes, Your Honor. So I'm not sure how she was mistaken as to that. How she was mistaken in the express upgrade class here is that under Washington law, there's actually a fairly recent case that came out after the decision, which is the Schnall versus AT&T, and they confirmed in that case that there are more than one ways to show reliance. There's one way to show individual reliance, but in fact in the Schnall case, after making the comment that you just made, the case was remanded to the trial court to see whether there could be class-wide reliance, and we believe we have class-wide reliance that applies equally to each member that does not get into the individual circumstances. To get sort of nitty gritty about it, my understanding of why the judge didn't think that was because he thought that when people were buying this express upgrade, they weren't necessarily paying more money for it. My understanding, so why would they care? But in some instances they were paying more money for it, in some instances they weren't. Is that right? The express upgrade class, it was a free upgrade. Oh, it was? I thought that sometimes it wasn't. I thought that sometimes it wasn't, sometimes it was. I believe that the express upgrade was essentially a free, it was a promotional thing. If you bought your computer, it started before Christmas. I thought it was up to the retailer or to the manufacturer, and in some instances they were charged. If they weren't charged, then he's right. The amount of the charges in upgrades, but the point being that... I'm sorry, I'm not understanding what you're saying. It seems to me that if there were, I thought the record said something like in some instances they were charged $99 for the upgrade, in some instances they weren't charged anything. It was not up to Microsoft, it was up to either the manufacturer or the retailer. But you're saying that's not true, that it weren't charged. There may have been different charges, but that issue is not relevant to the common wide proof of why, the reliance common wide proof issue. And that is here, and there's federal law that is equally applicable, the Clay-Humana recognized that on the federal side. And what these cases say is that in some cases, in the right cases, and that's what they said In the right case, in circumstances of this case, the mere payment of a charge is not going to be enough. But we're going to remand it to the trial court to determine whether there's common evidence across that class that makes it something that we don't have to get into the individual decision of who paid what, why did they pay it, what did they do. And the error made here on this class was the judge determined we'd have to go back and look at everyone's individual decision of why they purchased this. And that's not true because... That's not true because here, we have more than simply a payment of a thing. We have undisputed class wide evidence. Number one. Undisputed what? Class wide common circumstantial evidence of intent, or that's reliance. Which is, person persons a computer that was labeled as Vista capable computer, and then they did something more. That's where kind of the Schnall case stopped off. But here, those same class members then affirmatively sent in a form to receive their upgrade to Vista. And the issue... You're talking about people who didn't only buy something that had this, but they actually activated it. Actually activated, right. And this express class is only the people that actually took affirmative steps to then go to Microsoft and request the upgrade to Vista. And there's no other logical... The question what the judge below said was, well, we have to decide, did they really want Vista? What version of Vista? But that's not the question. The question is, was there common evidence of reliance that these folks wanted Vista? And we submit that there is no other explanation, either moral, legal, or logical, that a person who bought a computer that said, this will upgrade to Vista, and then sent in a form saying send me my Vista disk to upgrade to this thing, would buy that. And that's true across the board. Well, you don't need to go that far. I mean, in other words, it seems to me, the ultimate question is predominance. So the question isn't, is there no individualized evidence that would be necessary, that could possibly be necessary, but is there a lot of non-individualized evidence, including with regard to this causation factor? Correct. Is there evidence across the board? And essentially, that's what the Clay versus Humana case said. The court said, look, you can look at, is there common circumstantial evidence that could lead a reasonable fact fire to conclude beyond a preponderance of the evidence that an individual plaintiff relied? Suppose there isn't, necessarily. Suppose that the defense might be able to come in with a number of people who said, even though I sent this in, it didn't drive the reason I purchased this computer at all in the first place. Or I really wasn't confused, I knew very well that this was sort of Vista-lite, but that's what I wanted. Two things. One is, any defendant could say that in any case, a hypothetical person. We've been litigating this case for several years now. Microsoft has never come across with that hypothetical person. And always, you could find someone that come in and said, I bought something and I didn't care. And I'll use an absurd example. Maybe I want the disc to use as a coffee coaster, but the point is, is there common evidence? I gather this Vista-based home basic upgrade did something. It didn't do nothing. It's something. Our contention is that it was not an upgrade to something fairly called Vista. And we don't need to talk about that issue today, because Judge Peckman already denied a motion for summary judgment on that subject. So that's an issue for the jury. Whether or not the version of Vista they got is, in fact, fairly called Vista, is an issue for the jury to decide. I guess what Judge Peckman said was, well, now, some of the people in your class probably got what they expected and paid for. And we would have to sort that out. Is she wrong in that? If that were the rule, then there could never be a Consumer Protection Act claim or class action, because you could always find somebody who would say, you know, I didn't really care. I said I was going to get a blue car, and I got a red car, but I don't really care. I'll take the red car. And all of this law, I mean, the function of these Consumer Protection Act statutes and the whole class action, we can't get away from the overall purpose here is that we're trying to afford a mechanism for claims here with people that have several hundred dollar claims against the most powerful software seller in the world, and we have to have some mechanism that's fair to both sides, that we can't just get rid of all the claims, because we can always go and ask an individual purchase decision. And we can't just have too many claims that everyone come in. All this is a legal mechanism that the courts and you folks have all come up with to try to come to some middle ground so legitimate claims can be heard and that there was a way of factoring it out. And I really want to point out on the omission class side, none of that matters because the only thing that matters on our admission WDDM class is under the test here was, it's an objective test, and all the cases say that the test you apply in the omission side is if the person would have been told what was omitted, would a reasonable person have taken that into consideration when they're making a decision. One of the things the judge said was that this class is way, way, way too broad because there would be all kinds of people who bought computers with never any hope or desire of upgrading and they don't have this driver and it doesn't make any difference. That's not the test in the omission cases, in that if you go back, all the way back to the affiliated Supreme Court case and I think the best way was put in Judge Layton's Grace Harbor case. He said the proof of omission will not be based upon information the class member received about it. The judge says it's not an omission case because there's nothing fraudulent about selling computers without WDDM drivers. The only thing that makes this arguably actionable is that it has the label on it, VISTA capable. Incorrect. That's what you said. But I think that's what Judge Peckman fell into that thing is she put too much weight on the sticker. Every single omission case will have some misrepresentation quantity. The sticker in this case certainly does give context to the omission. Just like in the affiliated Ute case, the transaction, the real estate transaction gave context to the fact that they didn't tell the purchasers that they had individual interest in these transactions. Just like in the Morris International case, which is the Washington Yogurt case that applied affiliated Ute under the Act for Franchise, there was a representation in that case that you'd get unique yogurt and the court said, yeah, you're told you're going to get unique yogurt, but what you didn't tell them was that other people could get the same thing and it wasn't an exclusive thing. What we believe the cases show and what the test is, when you decide a legal question because you've got to decide how to tell the jury what to do here, the legal question in an omission case for the court to decide is, is it an affirmative omission or is it primarily omission? We believe the test is that you look at, is the harm greater by the omission or separate than the harm that is caused, any harm by the misrepresentation? Here with the stickers on the omission class, any harm by that, the most harm that that could be is that, as we talked before and it's with the express upgrade class, they didn't get a real version of VISTA, but they were harmed far beyond that because based on a secret discussion with Intel and a sophisticated plan to flood the market with the millions of soon to be obsoleted chips, these people not only got computers that couldn't run VISTA, they got computers that would never run the features that Microsoft was touting as far as reliability, security, operation, and they would never be able ever to fix that in the future. They would never ever be able to even have their own choice if they wanted to run a different version of VISTA in the future, as Microsoft likes to put out. Well, we told everyone there was best, better, and best, but they never told anyone that bought these obsolete chips that they put in there to sell more computers and to appease Intel that those computers were permanently and forever barred from getting any of those things. By the way, when we actually put this product back on the market, we're going to raise the back up, bar back up, and the computers that you just bought wouldn't even qualify as VISTA for a VISTA sticker when it goes on the market. Okay. You're out of time. Thank you very much. Good morning, Your Honors. I'm Steve Rumage, and I'm appearing this morning on behalf of the defendant, Microsoft. There are four things I'd like to touch on this morning. I want to talk briefly about the standard of review. I want to talk briefly about the background that got us to the two decisions, the two proposed classes that are now before the court, and then I want to start talking about the express upgrade class and conclude by talking about the WDDM or omission class. The first two may already be comfortable with you. We know it's an abusive discretion standard, and I think we know the background. Okay. I'm not going to go to the abusive discretion standard except to elaborate on one little point on the abusive discretion, and that is just to read from Doof's and what Doof's said about the abusive discretion standard in relation to the predominance inquiry, and I believe, Judge Canby, this goes to exactly what Your Honor was just talking about, and that is that 23b3 requires the district court to formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate, and it seems to me that when Your Honor was asking Mr. Thomas about whether predominance was one of those issues where the abusive discretion standard particularly held true, I would say that's absolutely what Doof's is saying, that those are things that are within the institutional competence of the district judge, the trial judge, and that is true in spades here, given how Judge Peckman analyzed it. In Judge Peckman's order, she really didn't do much of that balancing. She just said that, well, on this issue of causation, there's going to be too much individual... And that's actually why, Judge Canby, I was going to talk about the background a little bit second, because I think a lot of that analysis went on in the first class certification opinion, because what she... I'm talking about the first class certification opinion. She listed a whole bunch of common issues, which she then ignored when she got to the second class certification. Well, she talked about the... When you say common issues, I would say to the contrary, Your Honor. What she listed in the first opinion was a list of about six individual issues, which she said the trier of fact would want to know with respect to every class member. And that passage appears specifically at page 558 of her opinion, where she lists the four individual issues. The common issues Your Honor is talking about are the common issues that address the commonality point under 23A, and of course... But isn't that... Don't those same factors then have to factor into the predominance question? Exactly right. Just a minute. Hold on. I'm sorry. Because the... And I think this is what Judge Canby was asking as well. The predominance is a predominance over something. Exactly right. And to simply identify a set of individual questions is not to make the predominance analysis. Exactly right, Your Honor. I think Your Honor is absolutely right. And I think now when you get into that balancing of looking at the common issues and the individual issues and figure out which ones are going to predominate a trial... The question is how do we know Judge Peckman ever did that? Because that, I believe, is what the combination of what we call Kelly 1 and Kelly 4 does. And she talks about how at the trial, the trier of fact is going to focus on this issue of causation. And we frankly told her, and we will tell this Court, that when we go to trial in this case, causation is going to be the focus of our proof for reasons that are obvious when one looks at the actual individual plaintiffs that they posture as the representatives of these class-consistent... That may be the focus of your proof, but the focus of the plaintiff's proof is going to be a great deal of what the nature of this, the VISTA upgrades were and what went on within the company as to how they made a decision to do it this way and why it was, is or isn't that what was sold as VISTA home basic is or isn't of any value to anyone or is or isn't what anybody wanted or might have wanted. And then even as to the causation issues, there's going to be at least a fair amount of evidence of circumstantial nature suggesting that there was a good reason to be a fair amount of reliance by a fair number of people, and then you're going to come in and you're going to say, well, but some people may, well, we did tell people to look at individual, at the different varieties, but that's still common evidence. And then at some point you're going to, it's common evidence that you told people that. In other words, and then there's going to, then at some point you're going to say, yes, and there were probably a lot of people who therefore didn't make this decision for this reason, and that may be, and it may be necessary to devise some sort of a claims procedure or a separate stage proceeding because you can take a 23B and divide it into pieces to deal with that question with a fair amount of common evidence and a sum amount of individual evidence, but Judge Peckman didn't go through any of that in deciding the predominance issue. I would say, first of all, Your Honor, that's not how I would try the case. Now, Your Honor and I may try the case differently, but that's not how I would try the case. I would not try the case with common evidence. And the reason I wouldn't try the case with common evidence is because I know the facts and circumstances with respect to these proposed individual plaintiffs, and I know and I believe that I can beat these individual plaintiffs based on individual specific proof. I'm sorry, Your Honor? The only plaintiffs that are currently in this action, the named plaintiffs. And so we believe that that is exactly the balancing that Judge Peckman went through. And when she did that, Your Honor, she was not writing on an entirely blank slate because there is ample authority for exactly what she did and for recognizing that causation issues in a case such as this that unfold such as this are the predominating issues that defeat B-3 predominance. And I would cite in particular this Court's decision in Poulos v. Caesars World. I would cite the Second Circus decision in McLaughlin. I would cite the Seventh Circus decision in O'Shaughnessy, all of which are cases that have exactly what Your Honor, Judge Berzon just described as this common proof of alleged deceptive practices and hatched schemes and so on and so forth. And in all of which, the Circuit Court, Seventh, Ninth, and Second decided that the causation issues predominated because of the idiosyncratic nature of consumer choice. And that is exactly what we have here, Your Honor. Well, it was failure of a common causation that caused the decertification of the original class, wasn't it, or was it? I'm sorry, Your Honor? The original class was decertified. Right. And that was because of the failure of a common causation. Exactly. Here's what happened, and I think it's fascinating in terms of understanding the care that this district judge took and the lengths that she went to to see if plaintiffs could find a common threat, because she certified first a class that was under what was called price inflation theory. And her effort there was to find a way for them to cut across these individual causation issues. She recognized, she cited four cases that had rejected that kind of common causation proof and said, look, I'm going to give you time to develop it. We went through a year of discovery, Your Honor, on a certified class. We came back on a decertification motion where we showed that the plaintiffs could not present common class-wide proof of that sort of price inflation that affected the class. And Judge Peckman agreed, she decertified the class, and the plaintiffs did not seek review. And so this was a situation where the district judge first analyzed these issues, tried to find a way to give them a common thread, gave them a year of discovery, and when they couldn't make their proof, couldn't show that they could proceed on a class basis, she decertified. They responded by coming back and saying, you know what, we've rethought things. That deception-based class that you refused to certify a year and a half ago, we're going to recast it as these two smaller classes, they call them narrowed classes, and we're going to ask you to, number one, certify the express upgrade class and the theory of circumstantial common causation evidence, and number two, certify the WDDM class based on a presumption based on omissions. It's fascinating about that, Your Honor. That is exactly, exactly the two theories that the plaintiffs proposed in the Poulos case, all right, which this Court, in which this Court deferred to the district court and sustained a decision denying certification. But how, if you could just walk me through your argument with regard to the first class. Express upgrade. Express upgrade class. Why there is individual causation predominance, predominance, not just individual causation possibilities, as to people who actually upgrade. Yes. There's a huge factual misstatement in what Mr. Thomas said. I don't think it was deliberate, but it is a subtle but vitally important factual misstatement. When people sent in their express upgrade request, they did not send in a request that said, give me Vista. They sent in a request that said, give me Vista Home Basic. And what the record shows, Your Honor, is that there was ample evidence across the board in media, retailers, OEMs, websites, our websites, that told you if you bought a PC that had Windows XP Home, because remember, none of these people bought PCs. That's all common evidence, which will either lead to an inference or not lead to an inference, but it's common evidence. Well, Your Honor, I respectfully disagree, because it's not common evidence. What is common is the fact that they bought it. But why they bought it and what they thought when they bought it are the crucial liability determining factors. You're going to say they likely thought what they were told. I'm not going to say no. As a matter of fact, Your Honor, that's not true at all. I absolutely will never say that. And you know why? Because I don't know. And neither does Your Honor. We won't know until we ask each and every individual. Because we know that there is evidence out there that shows that they, number one, were told what edition they were going to upgrade to. You're going to upgrade to Windows Vista Home Basic. We know. When you ask each individual, what are you going to ask them? You're going to say, weren't you told that what you're going to get is Vista Home Basic? Yes. Well, therefore, didn't you think that you were going to get Vista Home Basic? Yes. Well. Your Honor, you and I try cases differently. It's clear. Because we ask these questions. We talk to these people. And I'll give you some examples. All right? We talked to Mr. Schroeder. And we said, what did you know? We knew there were different editions. Number two, we said, did you know you were upgraded to Windows Home Basic? Well, he wasn't sure. He was buying for his son. He didn't actually use the computer. So he was then asked, well, were there any features that you got on Windows Home Basic or, pardon me, that you didn't get on Windows Vista Home Basic that you were expecting? Not to my knowledge. Okay? Now, what I submit to you. Why isn't your much better argument here that this guy is not representative of the class that he reports to represent? Get rid of him and see if they can come up with somebody else. All right, Your Honor. If that's the case, then we'll do an individual examination of him. And, you know, the reality is, Your Honor, what we're talking about is not a typicality question. We're not talking about an adequacy question. We're talking about the core failures in individual proof. And the reality is that those core failures are going to be repeated over and over again. And if you have a class, as Your Honor has just implicitly suggested you might, where a huge percentage of the class got what they expected and a huge percentage of the class didn't, and we can only determine which is which through individual fact-finding, there is not a case that one can find that sustains a certification of a class in that scenario. And that is exactly what Judge Beckman said. Let's take Dukes, for example. Okay? I mean, Dukes essentially leaves open the possibility of a division of the ultimate question about whether individual employees were, in fact, disadvantaged by an overall policy. Right? And saying you could bifurcate it at that point possibly sort of leaves open the issue of how you would ultimately try that case. But Dukes is 23b-2. That's true. It's not 23b-3. But it also we meant to consider 23b-3. I'm sorry. You're right about that. I'm sorry. And that's not a trivial difference, as Your Honor knows. That is a huge, enormous difference because predominance is a 23b-3 exclusive concept. And in Dukes, the majority opinion specifically recognizes that there are standards of proof required of the proponents of class certification in a 23b-3 case that are not required in b-2. And this case brings to the fore why that is. And it's important to understand, Your Honor, again, this is mainstream law. When we cite at page 2627 of our brief 15 cases doing exactly what Judge Peckman did, when we cite the Schnall opinion, which is the Washington Supreme Court's most recent pronouncement on this causation issue, and it cites in both the majority and the dissent Judge Peckman's first decision on causation in this case, I'd say it's difficult to say this judge committed an error of law. And if this judge did commit an error of law, there is no way one can find an abuse of discretion. Let me conclude, since I have one minute left, with one point that I think brings home, clearer than anything, the lack of cohesiveness in this class. And I think that matters. That matters because the whole point of the predominance inquiry, according to the Supreme Court and A.M. Kim, is to determine whether the class is sufficiently cohesive to decide everything on a representative basis. So here we have our WDDM class. And we know that for the WDDM, it makes utterly no difference unless you upgrade to Windows Vista. So for the vast majority members of the proposed class of plaintiffs, it will make no difference that their PCs didn't support WDDM if they were upgraded. Judge Peckman found that as a fact. The plaintiffs do not dispute it. And now we have a plaintiff who's going to come in, be sworn in and testify, and she's going to say, I didn't know what Windows Vista was, I never saw the Windows Vista sticker, and I never upgraded to Windows Vista. But I want damages for myself and millions of people because my PC didn't have WDDM. Now, I submit we're going to win that case, Your Honor, on an individual basis. And even if we don't, this court, to reverse Judge Peckman, has to be comfortable that whatever verdict is reached as to Ms. Kelly is a verdict that ought to be applied across the class to millions of people who brought it different places, different PCs, with different knowledge, different expectations, different desires for WDDM, and some of whom may have actually upgraded to Windows Vista. And we submit, Your Honor, that no court would be comfortable, and Judge Peckman certainly was not comfortable having that class's claims adjudicated on a representative basis through this proposed representative. We respectfully submit that Judge Peckman did not abuse her discretion, and we ask that this court affirm. Thank you, Your Honor. Thank you, Your Honor. We'll give you a minute or so if you have anything that you really want to say. Thank you, Your Honor. Your Honors, I'd like to make three brief points in response, and I'll start with the last one first. Go back. If it's an omission class, which we believe the law clearly says, it does not matter what Ms. Kelly thought. What matters is would a reasonable consumer, have they been given the information that they were receiving computers that would have permanent limitations, would that have been important to them at the time they made the decision? Whether they would have upgraded later has no bearing on any of this. The second thing to keep in mind with all this, what makes this case probably unique in the jurisprudence of any of the cases, we can read tons of these cases, keep this in mind. This was a product that was not out yet. When these people bought these computers, every one of our class members bought computers before Vista was ever released on the market. They never had a chance to kick the tires. They never had a chance to understand what WDDM meant or anything else meant. What happened was, as Microsoft predicted, once Vista came out and everyone saw that, wow, there's a lot of cool stuff going to be, and they found that they had computers that wouldn't do that stuff, that's what happened. That's what came down, and that's when the harm happened, and they knew it was going to happen because they knew that people, and the evidence in the record is that they knew consumers would not understand what all these features they were talking about meant in a product that had not been released to the market yet. All of our computers by all of our class members were bought at a time based on something in the future. If, as your opponent suggests, he could demonstrate or has demonstrated that your individual named plaintiffs did, with regard to the first class, their injury was not caused by anything that Microsoft did because they didn't care about any of this, and with respect to the second class, I suppose you have to first get over the omission hump, but if you believe that this is not an omission case, similarly, that there was no injury to them. As to the actual facts of your individual plaintiffs, what then? Well, that's the last point I wanted to cover. That analysis is absolutely incorrect. The people that were given these express upgrades, they were given a form that was told what they were going to get. They didn't make a choice about, oh, I want to get Vista Basic, I want to get Vista this. They were given a form based on what they purchased that they would get someday in the future. The question here then becomes, did those people receive Vista, the ones that received Home Basic, and that's already a question that Judge Peckman has ruled as a question for the jury. That's something that was a common question to everyone in these people, in these class. They say we don't care. I mean, we sent something in that said we were going to get Vista Home Basic. That's what they got. What's the problem? But if it wasn't Basic, and they were told they were going to get an upgrade to Basic, and a jury determines that that Home Basic was not Vista, and they were told they would get an upgrade to Vista, they have been harmed, and that is the common proof across the class that they were told they would get an upgrade to a version of Vista. The question, the common question for that whole class, for the jury to decide, which again Judge Peckman has already ruled as a question for the jury, is if that Home Basic was not fairly, it was unfairly and deceptively called Vista, they did not get what they were told they were going to get back in that upgrade day, long before it was ever on the market and they could know what was happening. Thank you very much. Thank you, counsel, for a useful argument. The case of Kelly v. Microsoft is submitted, and we are in recess. Thank you.
judges: Canby, Thompson, Berzon